UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA                                                PLAINTIFF

v.                                    CASE NO. 4:09cr284 BSM

JAVIER TORRES-GUZMAN and
EFREN DIAZ-JASSO                                                        DEFENDANTS

## ORDER

At issue is a question of grave societal importance: What is one to do when told, "don't believe your lying eyes"?

This question arises out of separate defendant Javier Torres-Guzman's ("Torres") motion to suppress drugs seized by Arkansas State Trooper Mike McNeill ("McNeill") during a vehicle search. [Doc. No. 28]. Separate defendant Efren Diaz-Jasso ("Diaz"), who was a passenger in the car driven by Torres, joins in the motion. [Doc. No. 45]. Both defendants assert that McNeill's search was unlawful because he lacked probable cause and did not have Torres's consent to perform the search. The government opposes the motion, asserting that Torres consented to the search.

The motions, briefs, and evidence produced at that October 20, 2010 suppression hearing focused on whether a reasonable person in McNeill's position would have believed that Torres knowingly and voluntarily consented to the search. Knowing and voluntary consent is at issue because both Torres and Diaz assert that they do not understand English and therefore could not have consented to the search. Indeed, both defendants essentially assert that they had no clue what McNeill was talking about when he stopped them.

At the suppression hearing, the government sought to establish (1) that Torres understands English; (2) that he knew what McNeill was saying to him when McNeill asked to search the car; and (3) that Torres knowingly and voluntarily consented to the search. In support of this position, the government offered the testimony of James Lee White ("White") and McNeill, as well as the video tape of the stop.

White testified that he worked with Torres at Moore Forest Products for at least three years. He claimed that Torres only worked on a seasonal basis, from mid-summer to mid-winter, but that he spoke to Torres daily during the seasons that Torres worked and that Torres understood English. These conversations, always initiated by Torres, were typically short and revolved around work. White testified that Torres spoke English at a level of five on a scale of one to ten.

McNeill testified that he believed Torres understood English when he stopped him. He stated that he initiated the stop because Torres was not wearing his seatbelt. When he informed Torres of the reason for the stop, Torres said that he was wearing his seatbelt while driving but that he removed it when he was pulled over. McNeill maintained that it was this interchange that led him to believe Torres understood English. He stated that it was only after he asked Torres to get out of the car that Torres began to "act like" he did not understand English. McNeill further testified that his patrol car has a video camera in it that began recording the stop after Torres stepped out of the car. The video camera, according to McNeill, had a low battery and was not on during the time that Torres told him that he was

wearing his seatbelt.

The government then offered the video tape which starts after Torres is out of the car. The video tape does not show that Torres understands English. In fact, it clearly indicates that Torres struggled mightily to understand what McNeill was saying to him.  The tape is approximately thirty-seven minutes long and it plays like an Abbott and Costello routine, with McNeill playing Bud Abbott and Torres playing Lou Costello.  Each statement made by McNeill seems to illicit an increasingly confusing response by Torres, indicating that Torres has no idea what McNeill is talking about.

After a substantial period of time, McNeill finally asks Torres four times whether he can search the car.  Torres's first response is inaudible.  His second response is that it is his cousin's car.  McNeill then explains that Torres can consent to the search because he is the driver, to which Torres again says that it is his cousin's car.  McNeill again explains that Torres may consent to the search, at which point Torres says "sure."

The video tape clearly shows that Torres could not have consented to McNeill's search because he did not understand what McNeill was saying to him.  But hold on, the government pulls out the "don't believe your lying eyes" argument.  It asserts that what one cannot believe what one sees on the video because Torres is engaged in an act in order to lead McNeill to believe that he does not understand English. The government points out that, although the video shows one thing, it did not pick up the first part of the stop in which Torres explained that he had on his seatbelt and took it off when he was stopped.  The

government further points to White's testimony in which he stated that he worked with Torres for three years, during which he conversed in English with Torres on a daily basis.

In determining whether a search is consensual, "the Fourth Amendment requires only that the police reasonably believe the search to be consensual." *United States v. Sanchez*, 156 F.3d 875, 878 (8th Cir. 1998). "The precise question is not whether [defendant] consented subjectively, but whether his conduct would have caused a reasonable person to believe that he consented." *United States v. Jones*, 254 F.3d 692, 695 (8th Cir. 2001).

This case is peculiar because, although McNeill's testimony alone is insufficient to overcome the motion to suppress, White's testimony support's McNeill's position that Torres understands English. And once one believes that Torres understands English and that McNeill had cause to believe Torres understood English, it is not a great leap to find that a reasonable person would believe Torres voluntarily consented to the search when he answered "sure" to McNeill's request to search the car.

As a final matter, Diaz does not have standing to challenge the search. Because Diaz was only a passenger in the vehicle, he had no expectation of privacy, and therefore cannot challenge the search. See *U.S. v. Barragan*, 379 F.3d 524, 529 (8th Cir. 2004) ("An individual asserting Fourth Amendment rights 'must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable [.]'" (quoting *Minnesota v. Carter,* 525 U.S. 83, 88 (1998))); *U.S. v. Green*, 275 F.3d 694, 699 (8th Cir. 2001) ("The United States Supreme Court has explicitly determined that a person

has no reasonable expectation of privacy in an automobile belonging to another.") For this reason, in addition to the reasons set forth above, Diaz's motion is denied.

For all of the reasons set forth above, the motions to suppress [Doc. Nos. 28, 45] are denied.

IT IS SO ORDERED this 22nd day of October, 2010.

_____
UNITED STATES DISTRICT JUDGE